Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Michael D. Murphy
Assistant United States Attorney
402 E. Yakima Avenue, Suite 210
Yakima, Washington  98901
(509)  454-4425

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | 1:21-CR-02005-MKD |
| Plaintiff, | PLAINTIFF'S SENTENCING |
| vs. | MEMORANDUM |
| JEREMIAH BOBB, | |
| Defendant. | |

The United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Michael D. Murphy, Assistant United States Attorney, submits the following Sentencing Memorandum.

Defendant was convicted of both counts charged in a Superseding Indictment (ECF 66) following a jury trial held July 24, 2023 to July 31, 2023. ECF 167, 175, 179, 188. In Count 1, he was convicted of Sexual Abuse of a Minor in violation of

18 U.S.C. §§ 1153, 2243(a). ECF 190. In Count 2, he was convicted of Aggravated Sexual Abuse of a Child in violation of 18 U.S.C. §§ 1153, 2241(c). *Id.*

## I.    BASE OFFENSE LEVEL AND ENHANCEMENTS

The draft PSIR provides for a total offense level of 43, criminal history category of I, with a guideline range of incarceration of life to be followed by 5 years to life of supervised release. Draft PSIR, ECF 220, ¶ 142.  Although making a sentencing recommendation consistent with the guideline provision, the United States does have an objection to the draft PSIR. As noted in ECF 222, United States' Objections to Draft PSIR, the United States contends that Minor 2, the victim in Count 2, was under the custody, care, or supervisory control of Defendant during the relevant time period and that pursuant to USSG § 2A3.1(b)(3) a two-level increase should be applied to his offense level for Count 2. Defendant should be found to have an adjusted offense level of 40 as to Count 2.

## II.    DEPARTURES AND OBJECTIONS

The United States does not seek any departure in this matter or, alternatively, any variance.  As noted above, the United States contends that a two-level increase pursuant to USSG § 2A3.1(b)(3) should be applied to the offense level calculated for Count 2. The United States does not have any other objections to the draft PSIR. The Guidelines are the starting point and the initial benchmark for the sentencing process.  *Kimbrough v. United States*, 128 S. Ct. 558 (2007).  The Court "take[s] into account the totality of the circumstances" to determine whether a sentence is

reasonable. *Gall v. United States*, 128 S. Ct. 586, 597 (2007). Further, upon appellate review, "the scheme of downward and upward 'departures' [is] essentially replaced by the requirement that judges impose a 'reasonable' sentence." *United States v. Ellis*, 641 F.3d 411, 421 (9th Cir. 2011). A reasonable sentence under the facts of this case is one as recommended by the Sentencing Guidelines- that of life imprisonment.

Defendant objects to the draft PSIR with respect to both the Offense Conduct and the Offense Behavior not part of Relevant Conduct. ECF 228, Objections to PSIR. He notes that Fed.R.Crim.P. 32(d)(3)(C) requires the exclusion of any information that, if disclosed, might result in physical or other harm to the defendant or others. ECF 228, p. 2. He requests that the Court remove portions of the draft PSIR and remove sections that rely on statements made outside of court by witnesses who testified at trial. *Id.* at 8. Defendant argues that he will face "a more challenging prison experience than others" due to his offenses of conviction and that the draft PSIR is unnecessarily inflammatory and might affect his placement and programming by the Bureau of Prisons. *Id.* Defendant's request is contrary to the rules and law governing the information to be considered at sentencing. *Cf. United States v. Grimaldo*, 993 F.3d 1077, 1084–85 (9th Cir. 2021) (Holding that a district court does not abuse its discretion by refusing to strike past arrests that did not result in convictions in the face of a request to strike allegations from a PSR). Further, "[t]he purpose of Rule 32(d)'s exclusions is to prevent revealing *to the*

*defendant* information that might harm the defendant or others." *United States v. Streich*, 560 F.3d 926, 934 (9th Cir. 2009)(concurrence of Judge Kleinfeld, emphasis in original).

Defendant asserts that descriptions of law enforcement reports regarding witness statements should not be included in the PSIR because they are unnecessarily inflammatory and because they are rendered unreliable by trial testimony. ECF 228, p. 3.  However, "a sentencing court may rely on *any* evidence relating to a defendant's background, character, and conduct when considering the sentencing factors found in 18 U.S.C. § 3553(a)." *United States v. Christensen*, 732 F.3d 1094, 1104 n. 2 (9th Cir. 2013) (emphasis added). Sentencing courts are permitted to consider the widest possible breadth of information about a defendant to ensure that the punishment will suit not only the offense, but also the individual defendant. *Pepper v. United States*, 562 U.S. 476, 488 (2011). Accordingly, by statute Congress directs that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Even "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence". *United States v. Watts*, 519 U.S. 148, 157 (1997) (*per curiam*). Although Defendant objects to the information in the draft PSIR, he has not shown

and cannot show that the information provided to law enforcement officers was unreliable merely because, at trial, more limited testimony was elicited from witnesses. In making factual determinations, "a sentencing judge is generally not restricted to evidence that would be admissible at trial." *United States v. Egge*, 223 F.3d 1128, 1132 (9th Cir. 2000) "However, 'inadmissible evidence cannot be considered [at sentencing] if it lacks sufficient indicia of reliability to support its probable accuracy.' " *Id.* (citation omitted). While Defendant argues that only trial testimony was conducted under oath and in the context of cross examination, ECF 228, p. 3, he did not contest much of the trial testimony and declined cross examination of Minor 3 all together. ECF 215, Transcript of Jury Trial, Day 3, Volume III, p. 505. The United States contends that the fact that witnesses on the stand do not testify as to all of the details of information provided to law enforcement, in some instances years earlier, does not render the information in the law enforcement reports unreliable.

Not only was the information provided by the witnesses at trial generally consistent with their reports to law enforcement, but none of that information was used to increase Defendant's offense level for either conviction. ECF 220, ¶¶ 43-46, 49-52. "As a general rule, factual findings underlying a sentencing enhancement need only be found by a preponderance of the evidence," particularly where the enhancements are based on convictions. *United States v. Lonich*, 23 F.4th 881, 910

(9th Cir. 2022).[1] Here, not only is the information to which Defendant objects not shown to be unreliable, but it does not affect the guideline calculations.[2] For all of the foregoing reasons, the Court should deny Defendant's objections to the draft PSIR and consider all of the information contained within that document.

### III.    SENTENCING FACTORS UNDER 18 U.S.C. §3553(a)

1. <u>The nature and circumstances of the offense and the history and characteristics of Defendant.</u>

The Court has learned much of the nature and circumstances of this offense, as well as the history of the Defendant, through the course of the jury trial as well as through pre-trial litigation.  In addition, the Court was able to observe the testimony of Minor 1, the victim in Count 1 and Minor 2, the victim in Count 2 as well as the testimony of Minor 3, S.R. and view, from their manner of testifying, the trauma inflicted upon multiple girls by Defendant's sexual assaults. As shown at trial and reflected in the PSIR, Defendant has for years engaged in a pattern of sexually assaulting or attempting to sexually assault vulnerable females in the households where he has been staying.

Defendant entered an *Alford* plea to Fourth Degree Assault, Sexual Motivation and Indecent Exposure in 2015, based upon conduct in 2013. ECF 220, ¶ 71; ECF 82, United States Response to Defendant's Motion in Limine Objecting to Use of

---

[1] The Specific Offense Characteristic the United States seeks by its objection is supported by both information in the PSIR as well as by information provided in exhibits to the Objection. See ECF 222.

[2] The Court may still resolve the dispute with portions of the draft PSIR even if it determines that a ruling is unnecessary as to those portions because it is not considering them in imposing sentence where those matters might affect correctional management of the offender. *Streich*, 560 F.3d at 933 (concurring opinion).

Washington State Juvenile Court Alford Plea, Exhibit 1. Defendant identified the victim in that case as his grandmother to law enforcement. ECF 220, ¶ 76. The victim was approximately sixty-four years old at the time of Defendant's conduct. *Id.* at ¶ 73. Defendant's DNA and spermatozoa were located on the victim's shirt and bra. *Id.* at ¶ 78.

Minor 3 testified at trial that when she was around 12 or 13 and living in Newport, Washington, Defendant, who is her cousin, and his girlfriend stayed with her family. ECF 215, Transcript of Jury Trial, Day 3, Volume III, pp. 501-504. She also testified that she was eighteen at the time of trial and that when Defendant was staying at her family residence in Newport he touched the backside of her pants, under her clothes. *Id.* Minor 3 described this conduct as non-consensual and said that she tried to fight her way from under him. *Id.* As reflected in the draft PSIR, Minor 3 made much more extensive disclosures to law enforcement regarding Defendant's attempts to have sexual contact with her. ECF 220, ¶¶ 61-62, 65-67; *also see* ECF 81, United States Response to Plaintiff's Motion In Limine Objection to the Use of Prior Allegation of Sexual Assault, Exhibit 1.

As reflected in the verdict, Defendant also sexually assaulted Minor 1, who was fourteen or fifteen years old at the time of the assault, and Minor 2, who was four to six years old at the time of the assault while those girls were living in the same home as Defendant. Both victims also described Defendant's sexual assault of Minor 1 in the kitchen of the home, which may have occurred after Minor 1 turned sixteen years

old in July, 2017 but Defendant leaving the residence before the summer of 2018. With respect to the latter sexual assault, Minor 2 described it as, from her observation, hurting Minor 1. ECF 215, Transcript of Jury Trial, Day 3, Volume III, p. 484. Between 2013 and 2018 Defendant victimized multiple vulnerable girls or women with whom he had contact.

Even so, Defendant has a criminal history category of I and a criminal history score of 0. ECF 220, ¶ 80. As reflected in the draft PSIR, he has no significant substance abuse history. *Id.* at ¶¶ 93-99. He has limited employment history and dropped out of high school in either the 9th or 10th grade. *Id.* at ¶¶ 100, 102. The United States submits that there are no mitigating factors in the draft PSIR which indicate that a sentence outside of the sentencing guidelines is appropriate. Further, Defendant's history of sexually assaulting vulnerable girls or women, particularly given his sexual assault of a four-to-six-year-old girl who saw him as a father figure, merits a guideline sentence of life imprisonment. *Cf. United States v. Longee*, 407 F. App'x 122, 124 (9th Cir. 2010) (unpublished) (Affirming a life sentence for aggravated sexual abuse in violation of 18 U.S.C. §§ 1153(a) and 2241(a) and noting the defendant did not explain how or why his personal history affected his culpability, or how his history rendered a Guidelines sentence unreasonable.).

2. <u>The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment.</u>

A guideline sentence of life imprisonment is appropriate to reflect the seriousness of the offense. *Cf. United States v. Woody*, 45 F.4th 1166, 1180 (10th Cir. 2022) (Affirming concurrent life sentences for a sixty-year-old defendant for convictions for Aggravated Sexual Abuse and Abusive Sexual Contact of two step-daughters). In this case, Defendant has not accepted responsibility for his actions. The United States submits that the Court should conclude from the manner of testimony by the victims as well as by other factual witnesses, including their demeanor and the difficulty which they had in answering questions, particularly Minor 1, that Defendant's conduct and the recollection of his sexual assaults upon his victims, both charged and uncharged assaults, has caused significant trauma to the victims. In speaking with law enforcement, Defendant admitted to multiple sexual contacts with Minor 1, although claiming they were consensual and after she reached the age of consent. ECF 212, Transcript of Jury Trial Day 2, Volume II, July 26, 2023, testimony of SA Gunderson, pp. 428, 433. In contrast to Defendant's claims to law enforcement, Minor 1 did not describe her interactions with Defendant as consensual. *See* ECF 212, Transcript of Jury Trial Day 2, Volume II, July 26, 2023, testimony of Minor 1, p. 392 ("He forced himself on me"). Upward departures under the Sentencing Guidelines may be appropriate based upon multiple sexual contacts with the same victims and upon extended nature of sexual assaults. *United States v. Waseta*, 647 F.3d 980, 991-92 (10th Cir. 2011)(collecting cases).

In this case, the seriousness of the offense, particularly the fact of the perpetration of multiple rapes upon Minor 1 and Minor 2, and the need to provide just punishment for the significant and likely permanent harm caused to multiple girls by Defendant's uncharged conduct as well as the need for just punishment for his proven crimes of sexually assaulting both pubescent and pre-pubescent victims calls for a sentence of life imprisonment.

3. <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct.</u>

A sentence of life imprisonment would deter any further criminal conduct by Defendant. A statutorily minimum sentence may lead Defendant to conclude that his proven conduct was so minimal as to justify no more than the least sanction the law will permit, thereby failing to provide deterrence.

4. <u>The need for the sentence imposed to protect the public from further crimes of Defendant.</u>

Defendant is twenty-seven years old and testimony at trial as well as information within the draft PSIR describes his victimization and attempted victimization of three underage girls. In addition, he was convicted as a juvenile at the age of sixteen of Fourth Degree Assault with Sexual Motivation and Indecent Exposure in Yakima County Superior Court in a case involving a sixty-four year old victim. ECF 220, ¶ 77-78. Contrary to his representations to law enforcement at the time of the investigation of that crime, Defendant described a consensual sexual relationship with that victim to the draft PSIR writer. *Id. ¶* 87.

Prior conduct, even remote in time, can demonstrate an increased danger of recidivism. *United States v. Garner*, 490 F.3d 739, 743 (9th Cir. 2007). Further, "the particularly high danger of recidivism of sex offenders is well-known". *Id.* "The victims of sex assault are most often juveniles, and when convicted sex offenders reenter society, they are much more likely than any other type of offender to be re-arrested for a new rape or sexual assault. *Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 4 (2003) ((citation omitted) (internal quotation marks omitted) (alteration marks omitted)); *also see McKune v. Lile*, 536 U.S. 24, 33-34 (2002) ("When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault." The risk of recidivism posed by sex offenders is "frightening and high.").

Defendant's history of sexual assaults and attempted sexual assaults of multiple victims within a ten-year period provides a reasonable basis for the Court to conclude that he will present a danger to vulnerable females upon completion of any period of incarceration. Even the substantial mandatory minimum sentence of thirty years imprisonment required by Defendant's conviction in Count 2 would, if only the mandatory sentence be imposed, result in the release of Defendant while he was still in his fifties[3] and well able to continue to victimize other girls or elderly women in the community.

---

[3] Pursuant to 18 U.S.C. § 3624(b), Defendant would be eligible for up to 54 days credit toward the service of his sentence for each year served, resulting in a potential sentence of 25.5 years and Defendant's release at age fifty-two or fifty-three.

GOV'T SENT. MEMO.                 11

The United States notes that the Judiciary Sentencing Information Data indicated that defendants sentenced pursuant to USSG § 2A3.1 with a final offense level of 43 and a criminal history category of 1 received an average sentence of 362 months, just two months longer than the mandatory minimum sentence for Count 2. ECF 220, p. 26. However, Defendant's history of sexual assaults at a relatively young age make such a sentence inadequate and distinguish him from many other offenders. To an extent, a correctly calculated guideline, while advisory and not binding on the Court, establishes a reasonable sentence so long as it is in accord with the Court's consideration of the 18 U.S.C. § 3553(a) factors, as the Guidelines are based upon extensive research and consideration. *See Rita v. United States*, 551 U.S. 338, 356 (2007) ("[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation."). In this case, the properly calculated guideline sentence of life imprisonment is necessary to protect the public from further crimes by Defendant.

> 5.   The need for the sentence imposed to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

A sentence of life imprisonment would provide Defendant with effective correctional treatment. Defendant would undoubtedly benefit from vocational and educational programming as well, as he lacks a diploma or GED or a trade. Further, regardless of the term of imprisonment, this Court should impose a term of supervised release that extends for the life. "Supervised release fulfills rehabilitative ends, distinct

from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). In other words, supervised release is not a punishment in lieu of incarceration. *See United States v. Granderson*, 511 U.S. 39, 50 (1994). If being on supervised release were the punitive equivalent of being in prison, and if it served the just desserts function, there would be no need to put most criminals in prison. *See United States v. Irey*, 612 F.3d 1160, 1210 (11th Cir. 2010). Given Defendant's history of sexual exploitation of the vulnerable at his young age, supervision for life is appropriate regardless of the sentence of incarceration imposed to fulfill the rehabilitative ends of providing sex offender treatment and vocational assistance.

## IV.    GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends that the Court impose a sentence of incarceration of life followed by a term of supervised release for life and no criminal fine. Defendant must pay a $200 Special Penalty Assessment and may be required to pay a $5,000 Special Penalty Assessment pursuant to the JVTA. ECF 220, ¶¶ 131, 132. The United States does nor request the latter assessment in light of its recommendation of a sentence of life imprisonment. Should another sentence be imposed, the $5,000 JVTA assessment would also be appropriate. Restitution is mandatory; however, no requests for restitution have been received at the time of the filing of this document.

1   DATED this 23th day of  October, 2023.

2                                           VANESSA R. WALDREF
                                            United States Attorney
3

4                                           s/Michael D. Murphy
                                            MICHAEL D. MURPHY
5                                           Assistant United States Attorney

6

7

8

9

10                          **CERTIFICATE OF SERVICE**

11      I hereby certify that on October 22, 2023, I electronically filed the foregoing

12   with the Clerk of the Court using the CM/ECF System, and a copy was emailed to the

13

14   counsel of record in this case.

15

16                                          s/ Michael D. Murphy
                                            Michael D. Murphy
17                                          Assistant United States Attorney
                                            United States Attorney's Office
18                                          402 E. Yakima Ave., Suite 210
                                            Yakima, WA 98901
19                                          (509) 454-4425
                                            Fax:  (509) 249-3297
20

21

22

23

24

25

26

27

28